UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARIUSZ MAZUR, <br><br> Plaintiff, <br><br> v. <br><br> ZMC AUTO SALES, INC. and COPART, INC., <br><br> Defendants. <br> ──────────────────────────── <br> ZMC AUTO SALES, <br><br> Counter Claimant, <br><br> v. <br><br> MARIUSZ MAZUR, <br><br> Counter Defendant. <br> ──────────────────────────── <br> COPART, INC., <br><br> Cross Plaintiff, <br><br> v. <br><br> ZMC AUTO SALES, <br><br> Cross Defendant. | CAUSE NO.: 2:19-CV-333-TLS |

**OPINION AND ORDER**

This case is, at its heart, a dispute over approximately $2,000. The Plaintiff Mariusz Mazur purchased a Porsche sports car on December 15, 2016, through an online auction run by the Defendant Copart, Inc., using the account of the Defendant ZMC Auto Sales, Inc. After the

purchase, the Plaintiff took possession of the Porsche, but Copart delivered the title to ZMC. The Plaintiff alleges that Copart improperly transferred title to ZMC and that ZMC, through its owner Zbigniew Czyzewski, improperly withheld the title from the Plaintiff.

## FINDINGS OF FACT

Prior to the bench trial, no undisputed material facts were established. *See* Pre-Trial Order ¶¶ G, H, ECF No. 75.

At trial, the Court heard testimony from the following witnesses:

- Sherri Van Hook, Field Examiner for the Indiana Secretary of State, Auto Dealer Services Division;

- Scott Conner, Deputy Director of the Indiana Secretary of State, Auto Dealer Services Division;

- Mark Flesher, Account Manager for Copart Auto Auction;[1]

- Mariusz Mazur, the Plaintiff;

- Alfred Kopacz, Owner of Best Way Auto Care;

- Marc Donaldson, Attorney and former counsel for ZMC Auto Sales;

- Zbigniew Czyzewski, Owner of ZMC Auto Sales;

- Michael Buckman, Automotive Analyst for the Indiana Attorney General's Office;

- Beata Mazur, the Plaintiff's wife.

The following facts are based on admitted exhibits and from testimony elicited at trial.

The Plaintiff purchased automobiles through Copart's online auctions by using ZMC's online account. Trial Tr. vol. 2, 388–89, ECF No. 84. The Plaintiff obtained access to ZMC's account through Alfred Kopacz, the owner of Best Way Auto Care, an automotive body shop. *Id.*

---

[1] Flesher was the party representative, but he had no personal knowledge of the automobile or this transaction. *See* Trial Tr. vol. 1, 109–110, ECF No. 83.

He purchased a Nissan on November 10, 2016, a Maserati on December 8, 2016, a Dodge Caravan on January 10, 2017, and the Porsche—which is at the center of this dispute—on December 15, 2016. *Id.* at 284–85.

ZMC allowed its online account to be used by some customers of Best Way Auto to purchase cars from Copart's auctions. *See id.* at 388–89. After a car is purchased, ZMC's practice was to only give the title of a motor vehicle to the purchaser when the purchaser gave ZMC the money to pay the state sales tax on the car. *See* Trial Tr. vol. 3, 601–02, ECF No. 85. As for Copart, its representative explained that Copart will transfer to its member, in this case ZMC, the title to the car. *See* Trial Tr. vol. 1, 139–40, ECF No. 83. Except in limited circumstances, Copart does not apply for or issue titles. *Id.* at 118, 139–40.

In this case, the Plaintiff paid for the Porsche with a check in his name made payable to Copart. *Id.* at 116. Copart receives money for the automobile purchased at auction, then it issues a check to the seller. *See id.* at 134. The bill of sale for this purchase showed Safeco Insurance, not Copart, as the seller and ZMC Auto, not the Plaintiff, as the buyer. *Id.* at 148–49; Sales Receipt/Bill of Sale, Def. Ex. B. That bill of sale recorded fees that Copart charged, such as the buyer fee, secure fund discount, virtual bid fee, gate pass fee, and mailing fee. Tr. vol. 1, 163, 179–80; Def. Ex. B.

The Plaintiff received the Porsche from Copart, which the Plaintiff then had repaired by Best Way Auto. Tr. vol. 2, 325, 328. After the Porsche was repaired, ZMC obtained a rebuild title. Tr. vol. 3, 540–41. The following facts were introduced about the dispute over the Porsche's title:

- According to Van Hook, under Indiana law, a dealer must provide the title to a consumer within 31 days from the date of purchase. Tr. vol. 1, 13.

- Van Hook likewise testified that the dealer is required to collect sales tax. *Id.* at 66.

- She testified that if the customer fails to pay the sales tax, the contract is void. *Id.* at 15.

- In a typical transaction, the consumer would receive the vehicle after all agreed payments have been made to trigger the dealer's obligation to provide the title. *See id.* at 93–94.

- Czyzewski testified that ZMC would not give the title to the purchaser until the sales tax is paid. *See* Tr. vol. 3, 601.

- The Plaintiff and his wife were advised that sales tax must be paid to receive title as well. *Id.* at 669.

- The dealer is responsible for the sales tax, and there are penalties, including criminal penalties in some circumstances, for failing to collect the sales tax. Tr. vol. 2, 443–44.

- Indiana allows, though does not mandate, that a dealer can issue the title and list itself as a lienholder should the purchaser not pay the sales tax. Tr. vol. 1, 15–16.

- The Plaintiff never paid the sales tax to ZMC. Tr. vol. 2, 333.

- The Plaintiff never signed the paperwork necessary to receive the title. Tr. vol. 3, 600–01.

- ZMC did not give the Plaintiff the title to the Porsche. Tr. vol. 2, 461.

- In 2017, the Plaintiff attempted unsuccessfully to sell the Porsche through ZMC and Copart. *See id.* at 306–07.

- The Plaintiff surrendered the car to ZMC. Tr. vol. 1, 230.

- The Porsche was ultimately sold at auction, not through Copart, while the litigation was pending, Tr. vol. 3, 525.

- In addition to this litigation, the Plaintiff also filed a complaint online with the Indiana Secretary of State Dealer Services Division in February of 2022. Tr. vol. 1, 52–53.

- That complaint's resolution is pending the outcome of this litigation. *Id.* at 106.

The parties dispute the reasons for ZMC holding onto the title instead of transferring it to the Plaintiff. The Plaintiff testified that he was willing to pay the sales tax and that he "didn't have any problems with paying the taxes." Tr. vol. 1, 221–22. The Plaintiff understood that he had to pay the sales tax to get the title. Tr. vol. 2, 301. The Plaintiff testified that he tried to call Czyzewski "every day" and that he went to ZMC's office three or four times. Tr. vol. 1, 205–06. The Plaintiff accused Czyzewski of disappearing "for weeks, months sometimes." *Id.* at 222. Due to the issues with ZMC, the Plaintiff testified he only decided to sell the Porsche so that he could get his money back. *Id.* at 235–36.

Czyzewski, the owner and representative of ZMC, testified that no deal was finalized because the Plaintiff did not come to ZMC's office to complete the paperwork. Tr. vol. 2, 454. Czyzewski prepared a bill of sale for the Porsche in 2019 that he dated to March 9, 2017.[2] *Id.* at 454; Sales Paperwork – Porsche, Def. Ex. E. Czyzewski testified that he had the "papers ready" before then, and that he did not prepare the documents earlier because the Plaintiff was trying to "flip" the Porsche. Tr. vol. 2, 456–457. That is, he believed that the Plaintiff intended to sell the cars from the start, rather than keep them for personal use. *Id.* at 457. He was also concerned about the possibility that the Plaintiff would ask him to modify the title after he issued it, which allegedly occurred with one of the other automobile transactions between the parties. Tr. vol. 3, 544. Czyzewski also testified that he talked over the phone with the Plaintiff about paying sales tax, and that the Plaintiff knew it was necessary based on earlier calls. *Id.* at 541–42. For those reasons, he did not reach out to the Plaintiff to ask him to pay the sales tax and complete the transfer of the title. *Id.*

---

[2] The March 2017 date appears to be based on Kopacz finishing the repairs on the Porsche in March of 2017. *See* Tr. vol. 2, 307.

Czyzewski ultimately testified that there was no contract made between the parties because the Plaintiff never signed the bill of sale. Tr. vol. 2, 464. Specifically, Czyzewski testified that "there is no contract because [the Plaintiff] did not sign anything." *Id.* As to the fees, he testified, "[i]f you agree, you agree. If you want to void anything, we can void it." *Id.* He further testified that "there is room to talk to us—I mean to talk to each other. If you do not agree on one thing, we can void it. If you agree or do not agree on second thing, we can avoid it. It not big deal." *Id.* at 464–65.

Other than Beata Mazur's testimony, no testimony was elicited at trial about any agreement between the parties before the transactions occurred. She testified that she went with the Plaintiff to ZMC's office and was told that there would be about $400 of fees. Tr. vol. 3, 648. She said that they were not informed about needing to pay sales tax. *Id.* Notably, neither the Plaintiff nor Czyzewski testified about this meeting.

The Plaintiff, Czyzewski, and Kopacz all testified that the Plaintiff initially went to Kopacz to make the purchase, and then got into contact with ZMC later. According to the Plaintiff, he contacted Kopacz, who told him that Kopacz had access to Copart auctions by using ZMC's account. Tr. vol. 1, 196. The Plaintiff did not remember for sure if he had directly talked to ZMC about the purchase, or if he just contacted Kopacz. *Id.* at 197–98. But the Plaintiff did say that he had discussed paying a $200 buyers fee to ZMC. *Id.* at 203. Czyzewski testified that he had no prior relationship with the Plaintiff before Kopacz and the Plaintiff came together to purchase automobiles. Tr. vol. 3, 553–54. Kopacz testified that he collected the money for ZMC and acted as a middleman. Tr. vol. 2, 399–400. Kopacz testified that he was friends with the Plaintiff and coordinated between ZMC and clients who used ZMC's account to purchase automobiles. *Id.* at 389–90. Kopacz testified that after the purchase of the Porsche the Plaintiff

6

and Czyzewski began to argue, and Kopacz did not want to become involved. *Id.* at 389–90, 392. Nothing in Kopacz's testimony indicated that the Plaintiff and ZMC came to any agreement before the purchase of the automobiles.

As mentioned, the Plaintiff purchased other cars using ZMC's account. Under questioning by the Court, the Plaintiff testified that he had bought between five and six cars at auction over the course of 10 years. Tr. vol. 1, 251. He explained that he would buy automobiles at auction, drive them around, and then sell them to try and break even. *Id.* He testified that "every time" he dealt with ZMC, there were issues completing these automobile transactions. Tr. vol. 2, 286; *see id.* at 330. Regarding the Maserati, ZMC purchased the car from the Plaintiff after it had been repaired—the Plaintiff never possessed the title and he never paid any sales tax. *See id.* at 298–300. As for the Nissan and the Dodge, the Plaintiff eventually paid the sales tax and received the titles to those cars. *See* Tr. vol. 3, 667–69.

Finally, on the third day of the bench trial, the Plaintiff's wife, Beata Mazur, testified that the Plaintiff had a brain injury from an accident and struggled with his memory. *Id.* at 645. This claim, unsubstantiated by any expert testimony or medical records, was made for the first time by the Plaintiff's wife on the third day of testimony. The Plaintiff never claimed he had a brain injury, nor had this issue been raised by the Plaintiff's counsel in the over three years that this case has been pending. The Court had the opportunity to observe the Plaintiff, and the Court did not notice visible signs of a brain injury. Without further evidence, the Court's conclusions about the statements made by the Plaintiff will not be altered by this allegation.

## ANALYSIS

The Pre-Trial Order [ECF No.75] described the issues of the case as involving "Plaintiff's complaint, Defendants' answers, and Defendant ZMC's counterclaim, against the

Plaintiff." Pre-Trial Order ¶ B.[3] The Plaintiff's Complaint [ECF No. 1] alleges the following claims against the Defendants: Civil Crime Victims Act (Count I), Conversion (Count II), Breach of Contract (Count III), Promissory Estoppel (Count IV), Unjust Enrichment (Count V), and Fraud in the Inducement (Count VI).[4] The Defendant ZMC's Answer and Counterclaim [ECF No. 14] alleges a counterclaim of Breach of Contract against the Plaintiff.

Copart's Answer and Crossclaim [ECF No. 47] contains a crossclaim against ZMC for indemnification. However, ZMC never filed an answer to the crossclaim, and Copart never sought a default against ZMC. In addition, Defendants are now represented by the same attorney, and no reference to the crossclaim was made by the Defendants in either the Pre-Trial Order or the Defendants' Proposed Findings of Fact and Conclusions of Law. *See* ECF Nos. 75, 86. In light of these facts, the Court will treat Copart's crossclaim as abandoned.

**A.      Civil Crime Victims Act and Conversion**

In his first two counts, the Plaintiff brings a claim for conversion and a civil claim of criminal conversion against ZMC. Two forms of conversion exist under Indiana law. First, the tort of conversion

> is the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and

---

[3] The Court accepted the parties' Pre-Trial Order on March 24, 2022. *See* ECF No. 76.

[4] Although the Complaint indicates that all counts apply to both Defendants, in the post-trial briefing, the Plaintiff said that he only seeks to recover against Copart on the unjust enrichment claim (Count V). *See* Pl. Proposed Findings of Fact & Conclusions of Law, 6–7, ECF No. 88. Because the Plaintiff presented no evidence or argument as to Copart's liability on the other counts, the Court will only consider the Copart's liability as to the unjust enrichment claim.

> defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's.

*Schrenker v. State*, 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010).

Second, a plaintiff may also bring a civil claim for criminal conversion to recover treble damages and reasonable attorney fees. *See French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1166 (Ind. Ct. App. 2008); Ind. Code § 34-24-3-1. The defendant does not have to be convicted of criminal conversion; the plaintiff need only prove all the elements of criminal conversion by a preponderance of the evidence. *Id.* "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Ind. Code § 35-43-4-3. In addition, criminal conversion is inapplicable where the defendant's duty derives from a contractual obligation because the law did not intend to criminalize bona fide contract disputes. *French-Tex*, 893 N.E.2d at 1167–1168.

The key element that distinguishes criminal conversion from civil conversion is the mens rea requirement. *See Schrenker*, 919 N.E.2d at 1194. To recover civil damages for criminal conversion, the plaintiff must prove that the defendant "knowingly or intentionally" converted the property. *Id.* at 1193–94. Under Indiana law, "[a] person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35–41–2–2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id.* § 35-41-2-2(b). In addition, the control must be unauthorized, so the defendant must be aware that there is a high probability that the control was unauthorized. *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012).

The Plaintiff's conversion claims are based on the Plaintiff's belief that ZMC was obligated to transfer the title to the Plaintiff, and Indiana law imposes legal duties related to title transfer. Under Indiana Code § 9-32-4-1(b)(2), a licensed dealer must deliver the title to the

9

purchaser within 31 days if certain conditions are met. Ind. Code § 9-32-4-1(b)(2). Relevant to this case, the dealer is obligated to deliver the title if the dealer provides the purchaser or transferee with an affidavit of transfer and if the purchaser or transferee made all agreed upon initial payments for the motor vehicle. *Id.* § 9-32-4-1(b)(2)(C), (D). Additionally, under Indiana's administrative code, the dealer is required to collect the sales tax from the purchaser. *See* 45 Ind. Admin. Code 2.2-3-5(c).

ZMC did not engage in either the tort of conversion or criminal conversion. The primary issue is that there was no unauthorized control. As was explained in testimony, ZMC properly received the title from Copart because the Porsche was purchased at auction through ZMC's account. While the 31-day timeframe to deliver title might ordinarily be invoked, the Plaintiff failed to introduce sufficient evidence to prove that the 31-day timeframe was applicable. Specifically, it does not appear that all agreed upon fees were paid. *See* Ind. Code § 9-32-4-1(b)(2)(D). This is an admittedly unusual situation because the Plaintiff paid for and received the Porsche without an agreement with ZMC as to the specific fees and costs required. However, ZMC refused to deliver the Porsche's title to the Plaintiff because Indiana regulations require that the sales tax be collected at the time the title is transferred. *See* 45 Ind. Admin. Code 2.2-3-5(c). And the Court does not agree with the Plaintiff that the existence of other methods of collecting the sales tax—for example, imposing a lien—*obligated* the Defendant to use those methods. Instead, the Court finds common practice in Indiana is to collect the sales tax and then transfer the title. Thus, there was no unauthorized control of the Plaintiff's property by ZMC.

Furthermore, the Plaintiff's criminal conversion claim fails because the Court finds that there is no compelling evidence that ZMC intentionally or knowingly retained possession of the Porsche's title in an unauthorized manner. As just discussed, to the extent that ZMC refused to

deliver the Porsche's title to the Plaintiff, ZMC believed it was complying with Indiana law requiring that the sales tax be collected at the time the title is transferred. Indeed, the Plaintiff and his wife both understood that the sales tax had to be paid, and they had paid the sales tax on other cars purchased in this manner. Czyzewski repeatedly testified that he was willing to transfer the title when the Plaintiff signed the bill of sale and paid the sales tax, and the Plaintiff failed to introduce a motive for why ZMC would purposely avoid transferring the title to the Plaintiff. The Court does not find the Plaintiff's testimony that ZMC purposely attempted to frustrate the Plaintiff's ability to pay the sales tax credible. The Plaintiff failed to prove the mens rea requirement necessary for criminal conversion.

Therefore, the Plaintiff failed to prove either his criminal conversion claim (Count I) or civil conversion claim (Count II).

**B.     Breach of Contract**

The Plaintiff's next claim is that a contract existed between the Plaintiff and ZMC, and that ZMC broke the contract. A breach of contract claim has three critical elements. There must be a contract, it must be breached, and there must be damages suffered. *Murat Temple Ass'n Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1129 (Ind. Ct. App. 2011). Under Indiana law, "[t]he basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the transaction." *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016).

The Plaintiff's claim is flawed for two reasons. First, there was no contract. Both parties admit that there was no written contract between the two. ZMC prepared contract paperwork for the Plaintiff to sign in order to receive the title but the Plaintiff never signed. But more importantly, the Court finds that no contract in any form was agreed to because no meeting of the

minds occurred. Instead, ZMC had an agreement with Best Way Auto to allow Best Way Auto to give customers like the Plaintiff the ability to use ZMC's account with Copart. The Plaintiff also stated at trial that his agreement was with Best Way Auto (i.e., Kopacz) in advance of purchasing the Porsche. While there was communication between the parties, there was no agreement as to the timing of title delivery and payment of taxes and fees other than the basic understanding that the sales tax had to be paid to receive title. No meeting of the minds occurred, and thus, no contract was made.

Secondly, even if a contract existed between the parties, no breach occurred on behalf of ZMC. This is because the Plaintiff never performed his obligation of paying the sales tax on the Porsche. It appears that it was ZMC's practice to require payment of sales tax before transfer of title, and the Plaintiff said he understood that payment was required to transfer the title. The Plaintiff's argument that ZMC had the other option of putting a lien on the title is unpersuasive in terms of proving a breach occurred. The Court finds that all the parties involved knew that the title would be delivered once the sales tax was paid. No express obligation was made between the parties that required the delivery of the Porsche's title to the Plaintiff without the sales tax being paid. Thus, ZMC did not breach any contract by failing to give the Plaintiff the Porsche's title without receiving the sales tax.

The Plaintiff failed to prove his breach of contract claim (Count III) against ZMC.

**C.     Unjust Enrichment**

The Plaintiff brings a claim against both ZMC and Copart for unjust enrichment. Under Indiana law, "[t]o prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Zoeller v. E. Chi. Second*

*Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citing *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)).

Copart was not unjustly enriched by the Plaintiff. As explained, Copart was not the owner or seller of the Porsche. Copart operates the auction website and had physical possession of the Porsche and its title at the time of the auction. Copart charges fees related to selling and transferring the automobiles, and it also charges membership fees. It does not appear Copart retained the full purchase price of the Porsche after the sale was completed. Copart delivered title to ZMC because ZMC's account was used to purchase the Porsche. This is because the Plaintiff was unable to independently bid on or purchase the Porsche because he was not a member of Copart. Thus, Copart was not unjustly enriched for simply allowing the Plaintiff to purchase the Porsche through ZMC's account.

Likewise, ZMC was not unjustly enriched. ZMC did not retain any benefit from holding onto the Porsche's title. No evidence was introduced at trial showing any benefit that ZMC received for holding onto the title. As previously discussed, the car was delivered to the Plaintiff and purchased by the Plaintiff through ZMC's account. ZMC did not receive any profit from this sale or appear to collect any fees from the Plaintiff. Nor did ZMC receive any benefit for simply holding onto the Porsche's title. There is no benefit ZMC received that would require it to repay the Plaintiff.

The Plaintiff is not entitled to recover on the unjust enrichment claim (Count IV) against ZMC and Copart.

**D.     Promissory Estoppel**

The Plaintiff also brought a claim for promissory estoppel against ZMC. Promissory estoppel is available "even in the absence of a contract." *First Nat'l Bank of Logansport v. Logan*

*Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991). The elements of a claim are "(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *Id.* Promissory estoppel "can act as a substitute for lack of consideration or lack of mutuality." *Id.* The Plaintiff need not show unjust enrichment or to have received benefit or consideration from the transaction. *Id.*

There is insufficient evidence that ZMC made promises with the expectation that the Plaintiff would rely on them. Indeed, the Plaintiff does not even mention his promissory estoppel claim in his Proposed Findings of Fact and Conclusions of Law. The Court finds that the Plaintiff did not receive a promise from ZMC to transfer the title without the sales tax being paid. The evidence at trial largely points to the opposite conclusion—that is, title would be transferred once the sales tax was paid. The Plaintiff's promissory estoppel claim (Count V) fails.

**E.     Fraud in the Inducement**

The Plaintiff's last claim against ZMC is for fraud in the inducement. Under Indiana law, fraud in the inducement occurs when "a party is induced through fraudulent misrepresentation to enter into a contract." *Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 44 n.6 (Ind. Ct. App. 2009). "The elements of fraud are '(1) a material representation of past or existing facts which (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party.'" *Id.* at 44–45 (quoting *Bilimoria Comput. Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005)).

The Defendant ZMC did not commit fraud in the inducement. Again, the Plaintiff does not mention this claim in his Proposed Findings of Fact and Conclusions of Law. There is

14

insufficient evidence to prove this claim because the Plaintiff does not point to any statements made that were false or deceptive. The Plaintiff's fraud in the inducement claim (Count VI) fails.

F.   **Breach of Contract Counterclaim**

Finally, ZMC asserted a counterclaim against the Plaintiff for breach of contract. ZMC's argument is premised on the existence of an implied contract between the Plaintiff and ZMC based on the Plaintiff's conduct and the bill of sale ZMC prepared. ZMC argues that the Plaintiff owes the money listed on the bill of sale and that the Plaintiff broke the contract by failing to pay the sales tax and charges in the bill of sale. However, the Court finds that no contract, implied or otherwise, exists. The Plaintiff purchased the Porsche from the Copart auction without communicating with ZMC prior to that time. Czyzewski testified at trial that "[t]here is no contract because [the Plaintiff] did not sign anything." Moreover, there was no agreement as to the fees listed in the bill of sale, which included legal and documentation fees for preparing the title. Czyzewski testified that all the fees in the bill of sale could be negotiated away, stating, "[i]f you agree, you agree. If you want to void anything, we can void it." Therefore, like the Plaintiff's breach of contract claim, ZMC's counterclaim for breach of contract is not supported by the evidence because no contract existed as to the bill of sale. *See Jernas*, 53 N.E.3d at 445 (listing the basic requirements for a contract).

## CONCLUSION

For the reasons stated above, the Court finds that the Plaintiff Mariusz Mazur is not entitled to a verdict in his favor as to any of the Counts in his Complaint and that the Defendant ZMC Auto Sales, Inc. is not entitled to a verdict in its favor as to its Counterclaim.[5]

---

[5] At trial, the parties explained that ZMC currently holds money in a trust account from the sale of the Porsche, which occurred after this case was initiated. However, the Court need not issue a judgment as to this money. Although ZMC hoped the Court would deduct any recovery it obtained from those funds, ZMC agrees that the money should be returned to the Plaintiff. *See* Defs. Proposed Findings of Fact &

The Court DIRECTS the Clerk of Court to ENTER JUDGMENT in favor of the Defendants ZMC Auto Sales, Inc. and Copart, Inc. and against the Plaintiff Mariusz Mazur on the Plaintiff's Complaint.

The Court DIRECTS the Clerk of Court to ENTER JUDGMENT in favor of the Plaintiff Mariusz Mazur and against the Defendant ZMC Auto Sales, Inc. on the Defendant's Counterclaim.

Finally, the Court DISMISSES the Cross-claim of the Defendant Copart, Inc. pursuant to Federal Rule of Civil Procedure 41(b).

SO ORDERED on August 18, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

Conclusions of Law 10–11, 15, ECF No. 86. Indeed, the Court notes that it appears this money should be returned to the Plaintiff. The Court also realizes that the Plaintiff's counsel expressed some concerns about the sale at trial. Those concerns, however, are not currently before the Court because they were not included in the Complaint or Pre-Trial Order that governed this case and trial.